IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TENITA BRYANT, and THEODORE MCQUEEN, individually and on behalf of all others similarly situated | ) ) ) ) | CASE NO. |
| | ) | JUDGE: |
| Plaintiffs, | ) ) | |
| | ) ) | **COLLECTIVE ACTION COMPLAINT** |
| | ) ) | |
| v. | ) ) | |
| NORTH COAST NATURAL SOLUTIONS, LLC c/o Ty Williams 4983 Hartley Drive Lyndhurst, Ohio 44124 | ) ) ) ) ) ) | |
| -and- | ) ) | |
| NORTH COAST 5 NATURAL SOLUTIONS CORPORATION c/o Level 5 Global International Holdings Corporation 4983 Hartley Drive Lyndhurst, Ohio 44124 | ) ) ) ) ) ) ) | |
| -and- | ) ) | |
| LEVEL 5 GLOBAL INTERNATIONAL HOLDINGS CORPORATION c/o Earle C. Horton 1301 East 9th Street, Suite 1410 Cleveland, Ohio 44114 | ) ) ) ) ) ) | |
| -and- | ) ) | |
| TIERNEY WILLIAMS aka TY WILLIAMS 4983 Hartley Drive Lyndhurst, Ohio 44124 | ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiffs TeNita Bryant, and Theodore McQueen, by and through undersigned counsel, on behalf of themselves and on behalf of all others similarly situated, bring this Complaint against Defendants North Coast Natural Solutions, LLC, ("North Coast") North Coast 5 Natural Solutions Corporation ("North Coast 5"), Level 5 Global International Holdings Corporation ("Level 5"), and Tierney Williams, and in support of their claims, state as follows:

## PRELIMINARY STATEMENT

1. This Complaint is filed as a collective action under 29 U.S.C. § 216(b), and is brought by and on behalf of persons who are or have been at some time employed during the applicable limitations period by Defendants, in the business of producing hempcrete for commerce.

2. Defendants have employed Bryant, and McQueen, for more than 30 days but have not paid them any wages for those hours worked.

3. Bryant, McQueen, and similarly situated employees are non-exempt, and were not paid minimum wages for any hours worked.

4. As a result of Defendants' failure to compensate Bryant, McQueen, and similarly situated employees for all hours worked, Defendants have violated the requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), and the Prompt Pay Act, Ohio Rev. Code § 4113.15 by failing to pay Bryant, McQueen, and similarly situated employees, minimum wages for all hours worked, as required by the FLSA, OMFWSA, and Ohio Rev. Code § 4113.15.

5. Bryant, and McQueen, bring this action on behalf of themselves and all other similarly situated individuals pursuant to the FLSA, 29 U.S.C. § 216(b).

2

## JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 to hear this Complaint and to adjudicate these claims because this action involves a federal question under the FLSA.

7. The Court's jurisdiction is also predicated upon 28 U.S.C. § 1367 as this Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental jurisdiction.

8. Venue is proper in the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 1391 because Defendants operate business in this district and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

### Plaintiffs

9. Plaintiff TeNita Bryant is a resident of the city of Twinsburg, county of Summit, and state of Ohio. Between January 14, 2019 and April 17, 2019 Bryant worked for Defendants as Vice President of Human Resources.

10. Plaintiff Theodore McQueen is a resident of the city of Cleveland, county of Cuyahoga, and state of Ohio. From April 1, 2019 to present, McQueen works for Defendants as a manufacturing worker.

### Defendants

11. Together, Defendants have employed Bryant, McQueen, and similarly situated employees at all times relevant as a single enterprise.

**North Coast Natural Solutions LLC**

12. Defendant North Coast Natural Solutions LLC ("North Coast") is an Ohio corporation with its principal place of business located at 12735 Kirby Avenue, Cleveland Ohio 44108.

13. North Coast manufactures hemp products, such as hempcrete, a lightweight and biodegradable version of concrete.

14. North Coast directly employs workers to produce goods for commerce.

15. Alternatively, North Coast has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

16. North Coast is an "employer" of Bryant, McQueen, and similarly situated employees as that term is defined by the FLSA and the OMFWSA.

17. "North Coast Natural Solutions, LLC" was the corporate entity listed on the employment offer letter to Bryant and McQueen.

18. At all relevant times, North Coast maintained control, oversight, and direction over Bryant, McQueen, and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other practices.

19. At all relevant times, North Coast has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

**North Coast 5 Natural Solutions Corporation**

20. Defendant North Coast 5 Natural Solutions Corporation ("North Coast 5") is an Ohio corporation with its principal place of business located at 12735 Kirby Avenue, Cleveland Ohio 44108.

21. North Coast 5 manufactures hemp products, such as hempcrete, a lightweight and biodegradable version of concrete.

22. North Coast 5 directly employs workers to produce goods for commerce.

23. Alternatively, North Coast 5 has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

24. North Coast 5 is an "employer" of Bryant, McQueen, and similarly situated employees as that term is defined by the FLSA and the OMFWSA.

25. "North Coast 5 Natural Solutions Corporation" was the corporate entity listed on the paystubs provided to McQueen, and similarly situated employees.

26. At all relevant times, North Coast 5 maintained control, oversight, and direction over Bryant, McQueen, and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other practices.

27. At all relevant times, North Coast 5 has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

**Level 5 Global International Holdings Corporation**

28. Defendant Level 5 Global International Holdings Corporation ("Level 5") is an Ohio corporation with its principal place of business located at 12735 Kirby Avenue, Cleveland Ohio 44108.

29. Level 5 manufactures hemp products, such as hempcrete, a lightweight and biodegradable version of concrete.

30. Level 5 directly employs workers to produce goods for commerce.

31. Alternatively, Level 5 has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

32. Level 5 is an "employer" of Bryant, McQueen, and similarly situated employees as that term is defined by the FLSA and the OMFWSA.

33. "Level 5 Global International Holdings Corporation" was the corporate entity listed as the incorporator of North Coast 5.

34. "Level 5 Global International Holdings Corporation" is the deed holder for the property located at 12735 Kirby Avenue, Cleveland Ohio 44108.

35. At all relevant times, Level 5 maintained control, oversight, and direction over Bryant, McQueen, and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other practices.

36. At all relevant times, Level 5 has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

37. Level 5's gross annual sales made or business done has been $500,000 or greater per year at all relevant times.

**Tierney Williams aka Ty Williams**

38. Defendant Tierney Williams is the founder, owner, and operator of North Coast, North Coast 5, and Level 5.

39. Williams is a resident of the city of Lyndhurst, county of Cuyahoga, and state of Ohio.

40. Williams is listed as "CEO of North Coast Natural Solutions, LLC" on the offer letters to Bryant and McQueen.

41. Williams is listed as the Incorporator of North Coast 5 Natural Solutions Corporation on the Ohio Secretary of State's website.

42. Williams is reported to be "CEO of Level 5 Global Consulting Group" by Crain's Cleveland.

43. Williams is listed as the creator and founder of Level 5 on the level5global.com website.

44. At all relevant times, Williams has been an "employer" of Bryant, McQueen, and similarly situated employees as that term is defined by the FLSA and the OMFWSA.

45. At all relevant times, Williams has been actively involved in managing the operations of North Coast, North Coast 5, and Level 5.

46. At all relevant times, Williams has had control over North Coast, North Coast 5, and Level 5's pay policies.

47. At all relevant times, Williams has had power over personnel and payroll decisions at North Coast, North Coast 5, and Level 5.

48. At all relevant times, Williams has had the power to stop any illegal pay practices that harmed Bryant, McQueen, and similarly situated employees.

49. At all times relevant, Williams has had the power to transfer the assets and liabilities of North Coast, North Coast 5, and Level 5.

50. At all relevant times, Williams has had the power to declare bankruptcy on behalf of North Coast, North Coast 5, and Level 5.

51. At all relevant times, Williams has had the power to enter into contracts on behalf of North Coast, North Coast 5, and Level 5.

52. At all relevant times, Williams has had the power to close, shut down, and/or sell North Coast, North Coast 5, and Level 5.

## FACTUAL ALLEGATIONS

53. Bryant, McQueen, and similarly situated employees work or worked for Defendants during the applicable statutory period.

54. Bryant, McQueen, and similarly situated employees are engaged in the production of goods for interstate commerce.

55. Alternatively, Bryant, McQueen, and similarly situated employees are engaged in an activity that is closely related and directly essential to the production of goods for interstate commerce.

56. Bryant, McQueen, and similarly situated employees are covered employees who are not otherwise exempt.

57. The FLSA requires employers of covered employees who are not otherwise exempt to pay these employees a minimum wage of not less than $7.25 per hour.

58. The OMFWSA requires employers of covered employees who are not otherwise exempt to pay these employees a minimum wage of not less than $8.55 per hour.

59. Defendants have a common policy of not paying Bryant, McQueen, and similarly situated employees minimum wage.

60. Defendants willfully operated under a common scheme to deprive Bryant, McQueen, and similarly situated employees of minimum wages by paying them less than what is required under federal law.

61. Defendants knew that McQueen, and similarly situated employees worked without receiving minimum wage pay because Defendants provided McQueen, and similarly situated employees with pay stubs showing the number of hours worked by McQueen, and similarly situated employees, but Defendants did not provide them with any compensation for those hours.

62. Defendants were aware, or should have been aware, of its unlawful payment practices and recklessly chose to disregard the consequences of its actions.

63. On December 12, 2018 North Coast and Williams promised to pay Bryant a $25,000 signing bonus.

64. On January 12, 2019 Bryant accepted Defendants' offer of employment.

65. Bryant's acceptance of Defendants' offer of employment was induced in part by the promise of a $25,000 signing bonus.

66. Bryant has not been paid the promised signing bonus.

67. Defendants have not paid Plaintiffs any wages to-date.

68. In or around September 2018, Williams told reporters at craisnscleveland.com that he had raised $46 million from private investors.

69. On or about April 15, 2019, Williams told McQueen and similarly situated employees that US Bank could not process all of the paychecks in a timely manner.

70. On or about April 18, 2019, Williams told McQueen and similarly situated employees that payroll was being switched to ADP.

71. On or about April 18, 2019, Williams told McQueen and similarly situated employees that they would each be given a $150 bonus per day for each day their paychecks were late.

72. On or about April 22, 2019, Williams told McQueen and similarly situated employees that ADP could not do Defendants' payroll because Defendants were in the business of manufacturing hemp.

73. On or about April 26, 2019, Williams told McQueen and similarly situated employees that they would receive their pay, including the promised $150 daily bonus, later that same week.

74. McQueen, and similarly situated employees, induced by the promise of a daily $150 bonus for each day their paychecks were late, continued working for Defendants.

75. On or about April 30, 2019, Williams told McQueen and similarly situated employees that the investors did not want to cover the entire payroll expense at once, and that McQueen and similarly situated employees would be receiving two checks.

76. On or about May 3, 2019, Defendants provided McQueen and similarly situated employees pay stubs showing the number of hours each employee worked.

77. On or about May 6, 2019 Williams told McQueen and similarly situated employees that the bank could not print the checks because "the bank ran out of paper."

78. On or about May 7, 2019 Defendants presented McQueen and similarly situated employees with paychecks.

79. The May 7, 2019 paychecks did not clear.

80. On or about May 12, 2019 Defendants told McQueen and similarly situated employees that the bank had frozen the company's accounts.

81. Bryant, McQueen, and similarly situated employees have not received any wages from Defendants to-date.

## FLSA COLLECTIVE ACTION ALLEGATIONS

82. Bryant, and McQueen bring Count I on behalf of themselves and all similarly situated individuals. The proposed collective class ("FLSA Collective") is identified as follows:

> All employees who have been employed by Defendants from January 1, 2019 until the date of final judgment in this matter.

83. Bryant, and McQueen consent in writing to assert their claims for unpaid wages under the FLSA pursuant to 29 U.S.C. § 216(b).

84. As this case proceeds, it is likely that other individuals will file consent forms and join as "opt-in" plaintiffs.

85. Members of the proposed FLSA Collective are known to Defendants and are readily identifiable through Defendants' records.

86. Bryant, McQueen, and the FLSA Collective are all victims of Defendants' widespread, repeated, systematic, and consistent illegal policies that have resulted in willful violations of

their rights under the FLSA, 29 U.S.C. § 201, *et seq*., and that have caused significant damage to Bryant, McQueen, and the FLSA Collective.

87. The FLSA Collective would benefit from the issuance of court-supervised notice of this lawsuit and an opportunity to join by filing their written consent.

## COUNT I – FAILURE TO PAY MINIMUM WAGE IN VIOLATION OF FLSA
### (On Behalf of Bryant, McQueen, and the FLSA Collective)

88. Plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein.

89. Defendants are an "enterprise" as defined by the FLSA, 29 U.S.C. § 203(r)(1), and are engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(b), (s)(1).

90. The FLSA, 29 U.S.C. § 207, requires covered employers like Defendants to pay non-exempt employees like Bryant, McQueen, and the FLSA Collective minimum wage.

91. Bryant, McQueen, and the FLSA Collective worked for Defendants, but Defendants did not pay them the minimum wage required by the FLSA.

92. Defendants have not made a good-faith effort to comply with the FLSA as it relates to the compensation of Bryant, McQueen, and the FLSA Collective.

93. Defendants knew Bryant, McQueen, and the FLSA Collective worked without receiving minimum wage, and they willfully failed and refused to pay Bryant, McQueen, and the FLSA Collective minimum wages pursuant to 29 U.S.C. § 255.

94. Defendants' willful failure and refusal to pay Bryant, McQueen, and the FLSA Collective minimum wages for time worked violates the FLSA, 29 U.S.C. § 207.

95. As the direct and proximate result of Defendants' unlawful conduct Bryant, McQueen, and the FLSA Collective have suffered and will continue to suffer a loss of income and other

damages. Bryant, McQueen, and the FLSA Collective are entitled to liquidated damages and attorney's fees and costs incurred in connection with this claim.

### COUNT II – FAILURE TO PAY MINIMUM WAGE IN VIOLATION OF OHIO MINIMUM WAGE STANDARDS ACT
### (On Behalf of Bryant, and McQueen)

96. Plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein.

97. Starting January 1, 2019, Defendants did not pay Bryant, and McQueen, at least minimum wages.

98. By not paying Bryant and McQueen, proper minimum wages for time worked, Defendants have violated the OMFWSA.

99. As a result of Defendants' violations, Bryant, and McQueen, are entitled to damages, including, but not limited to, unpaid minimum wages, costs, and attorney's fees.

### COUNT III – UNTIMELY PAYMENT OF WAGES IN VIOLATION OF OHIO REV. CODE § 4113.15
### (On Behalf of Bryant, and McQueen, Against North Coast, North Cost 5, and Level 5)

100. Plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein.

101. During all relevant times, North Coast, North Coast 5, and Level 5 were entities covered by the Prompt Pay Act, Ohio Rev. Code § 4113.15, and Bryant, and McQueen, were employees within the meaning of Ohio Rev. Code § 4113.15 and were not exempt from its protections.

102. Ohio Rev. Code § 4113.15(A) requires that North Coast, North Coast 5, and Level 5 pay Bryant, and McQueen, all wages, on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or

before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

103. Bryant and McQueen's unpaid wages have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

104. In violating Ohio law, North Coast, North Coast 5, and Level 5 acted willfully, without a good faith basis, and with reckless disregard to Ohio law.

105. As a result of North Coast, North Coast 5, and Level 5's willful violation, Bryant and McQueen are entitled to unpaid wages and liquidated damages, as stated in Ohio Rev. Code § 4113.15.

## COUNT IV – BREACH OF CONTRACT
### (On Behalf of Bryant against North Cost and Williams)

106. Bryant restates each and every paragraph, as if fully restated.

107. On January 12, 2019, Bryant and Defendants entered into a legally binding contract.[1]

108. Defendants breached its contract with Bryant by not paying her the signing bonus.

109. As a direct result of Defendants' unlawful conduct, Bryant suffered and continues to suffer pecuniary harm.

## COUNT V – PROMISSORY ESTOPPEL
### (On Behalf of Bryant against North Cost and Williams)

110. Bryant incorporates by reference the allegations from the preceding paragraphs as if fully re-alleged herein.

111. Defendants made clear and unambiguous promises to Bryant related to compensation for Brant's performance of services for Defendants.

112. In reliance upon Defendants' promises, Bryant chose to forego other career opportunities.

---

[1] Exhibit A.

13

113. Defendants made these promises with the reasonable expectation that the promises would induce Bryant to forgo other career opportunities.

114. Bryant, to her detriment, actually and justifiably relied upon Defendants' promises.

115. As a direct result of Defendants' unlawful conduct, Bryant suffered and continues to suffer pecuniary harm.

116. An injustice to Bryant can only be avoided through enforcement of Defendants' promises.

## <u>COUNT VI – PROMISSORY ESTOPPEL</u>
### (On Behalf of McQueen)

117. McQueen incorporates by reference the allegations from the preceding paragraphs as if fully re-alleged herein.

118. Defendants made clear and unambiguous promises to McQueen related to compensation for McQueen's performance of services for Defendants.

119. In reliance upon Defendants' promises, McQueen chose to forego other career opportunities.

120. Defendants made these promises with the reasonable expectation that the promises would induce McQueen to forgo other career opportunities.

121. McQueen, to his detriment, actually and justifiably relied upon Defendants' promises.

122. As a direct result of Defendants' unlawful conduct, McQueen suffered and continues to suffer pecuniary harm.

123. An injustice to McQueen can only be avoided through enforcement of Defendants' promises.

## COUNT VII – FRAUD RELATING TO THE DECEMBER 12, 2018 CONTRACT WITH BRYANT
### (On Behalf of Bryant against North Cost and Williams)

124. Bryant incorporates by reference the allegations from the preceding paragraphs as if fully re-alleged herein.

125. In December 2018, North Coast and Williams made the representation that they would pay Bryant a $25,000.00 signing bonus.

126. North Coast and Williams did not intend to pay Bryant a $25,000.00 signing bonus.

127. In December 2018, North Coast and Williams made material representations to Bryant that North Coast and Williams knew to be untrue, which North Coast and Williams made with the purpose of misleading Bryant, which North Coast and Williams made with the purpose of misleading Bryant, and upon which Bryant justifiably relied to her detriment.

128. As a direct result of North Coast and Williams' unlawful conduct, Bryant suffered and continues to suffer pecuniary harm.

## COUNT VIII – FRAUD RELATING TO THE JANUARY OFFER TO MCQUEEN
### (On Behalf of MCQUEEN against North Cost and Williams)

129. McQueen incorporates by reference the allegations from the preceding paragraphs as if fully re-alleged herein.

130. In January 2019, North Coast and Williams made the representation that they would pay McQueen $17.00 per hour.

131. North Coast and Williams did not intend to pay McQueen $17.00 per hour.

132. In January 2019, North Coast and Williams made material representations to McQueen that North Coast and Williams knew to be untrue, which North Coast and Williams made with the purpose of misleading McQueen, which North Coast and Williams made with the

purpose of misleading McQueen, and upon which McQueen justifiably relied to his detriment.

133. As a direct result of North Coast and Williams' unlawful conduct, McQueen suffered and continues to suffer pecuniary harm.

## **COUNT IX – UNJUST ENRICHMENT**
### **(On Behalf of Bryant against North Cost and Williams)**

134. Bryant incorporates by reference the allegations from the preceding paragraphs as if fully re-alleged herein.

135. In performing the duties of a Human Resources Vice President for Defendants, Bryant conferred a benefit upon defendants.

136. Defendants knew that Bryant performed the duties of a Vice President of Human resources for Defendants.

137. Defendants retained the benefit of Bryant's performance of the duties of a Vice Preisident of Human Resources under circumstances where it was unjust to do so.

138. As a direct result of North Coast and Williams' unlawful conduct, Bryant suffered and continues to suffer pecuniary harm.

## **COUNT X– UNJUST ENRICHMENT**
### **(On Behalf of McQueen against North Cost and Williams)**

139. McQueen incorporates by reference the allegations from the preceding paragraphs as if fully re-alleged herein.

140. In performing the duties of a manufacturing worker, McQueen conferred a benefit upon Defendants.

141. Defendants knew that McQueen performed the duties of a manufacturing worker for Defendants.

142. Defendants retained the benefit of McQueen's performance of the duties of a manufacturing worker under the circumstances where it was unjust to do so.

143. As a direct result of North Coast and Williams' unlawful conduct, Bryant suffered and continues to suffer pecuniary harm.

   **WHEREFORE**, Plaintiffs TeNita Bryant and Theodore McQueen pray for all the following relief:

   A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Bryant, McQueen, and their counsel to represent the collective action members;

   B. Unpaid minimum wage pay, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

   C. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the OMFWSA, and Ohio Rev. Code § 4113.15;

   D. An award of unpaid minimum wages under the OMFWSA;

   E. Liquidated damages under Ohio Rev. Code § 4113.15;

   F. An award of any pre-judgment and post-judgment interest.

   G. An award of costs and expenses of this action, together with reasonable attorney's fees and expert fees; and

   H. Such other legal and equitable relief as the Court deems appropriate.

Respectfully Submitted,


/s/ *Claire I. Wade-Kilts*
Claire I. Wade-Kilts (0093174)
Sean H. Sobel (0086905)
Sobel, Wade & Mapley, LLC
2460 Fairmount Boulevard, Ste 314
Cleveland, Ohio 44106
T: (216) 223-7213
F: (216) 223-7213
wade@swmlawfirm.com
sobel@swmlawfirm.com

*Attorneys for Plaintiffs TeNita Bryant, Theodore McQueen, and the FLSA Collective*

## **JURY DEMAND**

Plaintiffs hereby demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ *Claire I. Wade-Kilts*
Claire I. Wade-Kilts (0093174)