UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **TENITA BRYANT, et al.,** | ) | CASE NO. 1:19CV1075 |
| | ) | |
| Plaintiffs, | ) | SENIOR JUDGE |
| | ) | CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| **NORTH COAST NATURAL** | ) | |
| **SOLUTIONS, LLC, et al.,** | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, SR. J.**:

This matter comes before the Court upon the Motion (ECF DKT #83) of Plaintiffs Theodore McQueen, Marcus Moore, Angelo McKenzie and Larry Gardner, Jr. for Summary Judgment against Defendants Dr. Jenny Enterprises, LLC; Vital Life Institute, LLC; Jenny P. Wilkins; and William M. Wilkins (collectively the "Wilkins Defendants").  For the following reasons, the Motion is denied.

**I. BACKGROUND**

Defendant North Coast Natural Solutions ("NCNS") and Defendant Level 5 Global International Holdings Corporation announced the Spring 2019 opening of a state-of-the-art manufacturing facility in the Glenville area of Cleveland, Ohio to produce hemp products,

including hempcrete, hemp plastics, hemp paper and hemp fabric.  (Business Plan, ECF DKT #83-6 at 8).  Moreover, CBD vapes would be manufactured as an addition to the product line from Dr. Jenny's brand (Vital CBD).  (*Id*. at 9).

Jenny P. Wilkins is identified as the President of CBD/Nutraceuticals Division in the NCNS Organizational Chart (ECF DKT #83-4) and in the Business Plan (ECF DKT #83-6).  Defendant Wilkins is further identified as a "naturopathic doctor and clinical research associate with extensive background in nutritional and hormonal biochemistry."  (*Id*.).  On September 18, 2018, Defendant Wilkins publicly announced on Twitter:

> Thank you #ohio for approving my industrial Cannabis project and Dr. Jenny wellness center in Cleveland's Glenville. What a great turn out at our ribbon cutting this past week.  Stay tuned for more details!  Our 400,000 sq ft. Manufacturing and processing Facility will be making history and setting the standards in the cannabis space. Thank you all who came out and supported. #DrETcaviness #Tywilliams #DrAatonPhillips.  (ECF DKT #83-7).

Plaintiffs McQueen, McKenzie, Gardner and Moore were hired by NCNS as general laborers in 2019.  *See* McQueen Affidavit (ECF DKT #83-2); McKenzie Affidavit (ECF DKT #83-3); Gardner Affidavit (ECF DKT #83-1).  Their job description included:  "receive and process incoming merchandise; manage, organize and retrieve merchandise within the warehouse; control the inventory of merchandise; demonstrate creative thinking by suggesting alternative procedures to work flow or possible areas of improvement to immediate manager." (ECF DKT #83-4).  As part of their employment with NCNS, Plaintiffs were required to attend training beginning on March 4, 2019, daily from 8:00 a.m. to 2:00 p.m. the first week, and eight hours a day for the next 90 days.  (Training email, ECF DKT #83-5).

During the training period, Plaintiffs received paychecks from Defendant North

Coast 5 Natural Solutions Corporation.  (ECF DKT #83-8).  According to Plaintiffs, none of these checks cleared and Plaintiffs were never paid for their hours worked.  (Affidavits, ECF DKT #83-1, #83-2, #83-3).

Plaintiffs move for summary judgment in their favor, arguing that as the President of CBD/Nutraceuticals Division of NCNS, Defendant Wilkins was a "corporate officer with operational control" over NCNS.  Defendant Wilkins explicitly referred to the NCNS production facility as "my industrial Cannabis project" in her tweet.  A portion of the facility was going to be named the "Dr. Jenny Wellness Center."

Plaintiffs conclude that as a corporate officer with operational control of NCNS, Defendant Jenny P. Wilkins should be held liable under the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Wage Standards Act ("OMWSA") for Plaintiffs' unpaid wages.  The OMWSA incorporates the FLSA's definitions, standards and principles.

None of the Wilkins Defendants has filed an opposition brief and the time for response has expired.

## II. LAW AND ANALYSIS

**Standard of Review**

Summary judgment shall be granted only if  "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed.R.Civ.P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).  The moving party must either point to "particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed.R.Civ.P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Unopposed motions**

Local Rule 7.1(g) authorizes the Court to "rule on unopposed motions without hearing at any time after the time for filing an opposition has expired." Pursuant to Local Rule 7.1(d), "each party opposing a motion must serve and file a memorandum in opposition within thirty (30) days after service of any dispositive motion." The district court's power to grant dispositive motions because they are unopposed is firmly settled. *Demsey v. R.J. Reynolds Tobacco Co.*, 2005 WL 1917934, *2 (N.D.Ohio 2005); *Peacock v. Bayview Loan Serv.*, 2005 U.S. Dist. LEXIS 10276, *9-10 (N.D.Ohio 2005) (both citing to *Cacevic v. City of Hazel Park*, 226 F.3d 483, 492 (6th Cir. 2000)). A party's continuing "failure to respond" may be deemed a "confession" to the motion's merit. *Cacevic, id.*

However, the Sixth Circuit instructs that the power to grant unopposed dispositive motions is not unfettered.

> Even where a party "offer[s] no timely response to [a] [ ] motion for summary judgment, the District Court [may] not use that as a reason for granting summary judgment without first examining all the materials properly before it under Rule 56(c)." *Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir. 1979). This is so because "[a] party is never required to respond to a motion for summary judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the movant." *Id*. at 64. Therefore, even where a motion for summary judgment is unopposed, a district court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists. *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 629-30 (6th Cir. 2014).

The Sixth Circuit does not intend "to imply that a trial court, as it reviews the evidence which is presented in circumstances such as these, may blithely accept the conclusions argued in the motion. The trial court must indeed intelligently and carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy or

inventing the riposte for a silent party." *Guarino*, 980 F.2d at 407.

### **Employer" under the FLSA**

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). More than one "employer" can be simultaneously responsible for FLSA obligations. See *Dole v. Elliott Travel & Tours, Inc*., 942 F.2d 962, 965 (6th Cir. 1991). "The remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." *Id*. (quoting *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989) (per curiam)).

The question of "[w]hether a party is an employer within the meaning of the FLSA is a legal determination." *Id*.; *Myers v. Memorial Health System Marietta Memorial Hospital,* No. 2:15-CV-2956, 2019 WL 1125665 at *2 (S.D. Ohio, Mar. 12, 2019).

The Sixth Circuit has held that "the test to be applied in determining whether a person is an 'employer' responsible for FLSA obligations is one of 'economic reality,' " rather than "common law concepts of agency." *U.S. Department of Labor v. Cole Enterprises, Inc*., 62 F.3d 775, 778 (6th Cir. 1995); *Elliott Travel*, 942 F.2d at 965. Under this "economic reality" test, "a corporate officer who has operational control of the corporation's covered enterprise is an 'employer' under FLSA, along with the corporation itself." *Cole*, 62 F.3d at 778.

A corporate officer with operational control means, "[o]ne who is the chief executive officer of a corporation, has a significant ownership interest in it, controls significant functions of the business, and determines salaries and makes hiring decisions. *Cole, id.*; see also *Elliott Travel*, 942 F.2d at 965 ("corporate officers with a significant ownership interest

who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of non-payment" were employers under the FLSA).

When making the determination whether a party is an employer, "[n]o one factor is dispositive; rather, it is incumbent upon the courts to transcend traditional concepts of the employer-employee relationship and assess the economic realities presented by the facts of each case." *Myers*, 2019 WL 1125665 at *2, quoting *Elliott Travel*, 942 F.2d at 965.

The Court has carefully examined all the materials before it and notes that none of Plaintiffs' exhibits are authenticated, nor do they mention the other Wilkins Defendants, *i.e.*, Dr. Jenny Enterprises, LLC; Vital Life Institute, LLC: and William M. Wilkins.

Defendant Jenny P. Wilkins is described as President of CBD/Nutraceuticals Division, a corporate officer, in both the Organizational Chart (ECF DKT #83-4) and the Business Plan (ECF DKT #83-6). The language of Defendant Wilkins's tweet somewhat supports her involvement with the NCNS business.

However, the Court sees no evidence of Jenny P. Wilkins's possessing an ownership interest in NCNS, significant or otherwise. *Cole, id.*; *Elliott Travel*, 942 F.2d at 965. There is no evidence that Defendant Wilkins controlled the day-to-day functions of the business. Further, any evidence that Defendant Wilkins had decision-making control of employee compensation is lacking. Neither Defendant Wilkins's name nor her signature appears on the pay stubs submitted by Plaintiffs. (ECF DKT #83-8).

There has been no objection made to the unauthenticated documents nor has there

been any complaint of prejudice; so, the Court has considered Plaintiffs' proffered materials. Even with that, the evidence falls short of establishing any one of the Wilkins Defendants as "employers" under the FLSA and the OMWSA.

### III. CONCLUSION

After careful review, the Court finds that there are material facts in dispute and finds that the Wilkins Defendants, and specifically Defendant Jenny P. Wilkins, are not employers for FLSA and OMWSA purposes as a matter of law. Therefore, for these reasons, the Motion (ECF DKT #83) of Plaintiffs Theodore McQueen, Marcus Moore, Angelo McKenzie, and Larry Gardner, Jr. for Summary Judgment against Defendants Dr. Jenny Enterprises, LLC; Vital Life Institute, LLC; Jenny P. Wilkins; and William M. Wilkins (collectively the "Wilkins Defendants") is denied.

**IT IS SO ORDERED.**

**DATE: September 29, 2022**

                                                    s/Christopher A. Boyko
                                                    **CHRISTOPHER A. BOYKO**
                                                    **Senior United States District Judge**